IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JACQUE A. DAVIS,                 )
                                 )
              Plaintiff,         )
                                 )
v.                               )    Case No. CIV-08-460-FHS
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security Administration,         )
                                 )
              Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Jacque A. Davis (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act.   Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled.   For the reasons
discussed below, it is the recommendation of the undersigned that
the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A).   A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); <i>see also</i>, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on December 28, 1956 and was 52 years old at the time of the ALJ's decision. Claimant obtained her GED and received an associate's degree in criminal justice. Claimant has worked in the past as a city gardener and groundskeeper. Claimant alleges an inability to work beginning June 3, 1998 due to neck

problems and depression.

## Procedural History

On July 26, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 8, 2008, a hearing was held before ALJ Richard J. Kallsnick in Tulsa, Oklahoma. By decision dated April 15, 2008, the ALJ found that Claimant was not disabled during the relevant time period. On October 8, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that, while Claimant suffered from severe limitations and she could not perform her past relevant work, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) finding Claimant's pain claims were not entirely credible; and (2) engaging in a faulty RFC evaluation.

## Credibility Analysis

Claimant asserts the ALJ failed to properly consider her claims of pain in light of the medical record. On February 13, 1990, Claimant was struck in the head while employed as a gardener and sustained a neck injury. On May 9, 1990, Dr. John Vosburgh determined Claimant had "made a complete recovery from" the injury. He further found Claimant had a full range of motion in her neck in flexion, extension, lateral bending, and rotation. Dr. Vosburgh concluded Claimant was pain free with no indication that further treatment was needed. (Tr. 145).

In April of 1993, Claimant was diagnosed with carpal tunnel syndrome. She underwent successful surgery to free the wrist. (Tr. 152-53). Claimant was released for work with the only restriction being against overtime for a period of four weeks. (Tr. 159).

On February 25, 1997, Claimant began seeking treatment for headaches and tension in her neck from Dr. Aletha Oglesby. She was diagnosed with migraine headaches. (Tr. 184).

5

On September 4, 1997, Claimant was attended by Dr. Michael Farrar. Claimant had good range of motion in upper and lower extremities with some mild motion loss and spasms in the cervical spine area. Thoracic and lumbar spines were unremarkable. An MRI showed degenerative disc disease at C4-5 and C6-7 with mild stenosis at C5-6 and minimal protrusion at C6-7. (Tr. 257).

Claimant continued to complain of neck pain with conservative treatment. On June 3, 1998, Claimant was attended by Dr. Karl Detwiler. He found Claimant experienced spondylosis at C5-6 along with spondylosis at C6-7 and disc bulging. He suggested anterior cervical discectomy at C5-6, C6-7 along with autologous iliac crest bone harvest and fusion. (Tr. 374-75). On December 10, 1998, Claimant underwent the surgical procedure performed by Dr. Donnie Hawkins. After the surgery, Dr. Hawkins determined Claimant had "done extremely well" and was up and ambulating one day post-surgery. She experienced only mild to moderate pain which was treated with oral analgesics. (Tr. 288). On June 9, 1999, Dr. Hawkins released Claimant to work, finding she had made an "excellent recovery" with "no evidence of neurological deficit." (Tr. 367).

On January 6, 2000, Claimant developed a fibrous union at C6-7 but the C5-6 fusion remained solid. (Tr. 341). Claimant underwent

an additional surgery on January 14, 2000 for an anterior interbody fusion at C6-7. (Tr. 342-43). Plaintiff was pleased with the results in a February 7, 2000 visit to Dr. Detwiler. (Tr. 357). On March 29, 2000, Dr. Detwiler released Claimant for work with a 20 pound lifting restriction. (Tr. 356). Dr. Hawkins concurred that Claimant was capable of working. (Tr. 408-09).

On May 14, 2002, Claimant returned to Dr. Hawkins complaining of chronic headaches, bilateral shoulder and neck pain and occasional radiating arm pain. Dr. Hawkins believed Claimant had developed some mild degenerative changes with very mild bulges and spondylosis of the discs at C4-5 and C5-6. However, he believed the areas could not be improved with additional surgeries because the condition was so mild. Dr. Hawkins prescribed ibuprofen with intermittent use of Lortab and Flexeril during flare-ups and recommended exercise. (Tr. 401-02).

On June 3, 2003, Claimant was evaluated by Dr. Gregory L. Mitchell. He concluded Claimant was not in need of additional evaluation or treatment, continuing medical maintenance, or prescription medications. He did not believe Claimant was in need of pain management but did concur with Dr. Hawkins' recommendation for exercise. Dr. Mitchell opined that Claimant should "be afforded vocational retraining for placement in a light-duty job."

(Tr. 493).

Claimant was referred to Dr. Anne Christopher, a board certified rehabilitation specialist. After examination, Dr. Christopher believed Claimant's pain was both physiological and psychological. She recommended Claimant pursue Botox injections to the spastic muscles in her cervical spine. She also believed Claimant to be an excellent candidate for a functional restoration/chronic pain program. Dr. Christopher recommended that Claimant begin taking Wellbutrin for depression. She did not believe Claimant should engage in long term use of opiate analgesics. (Tr. 474).

In a March 23, 2004 visit to Dr. Christopher, Claimant continued her treatment with ibuprofen, Wellbutrin, and baclofen. Claimant's chronic depression was found to be improved with the chronic pain program participation and Wellbutrin. Dr. Christopher concluded Claimant was "doing quite well." (Tr. 462).

On May 6, 2004, Claimant was evaluated by Dr. Kenneth R. Trinidad. Dr. Trinidad acknowledged Claimant was undergoing pain management treatment with Dr. Christopher. He also considered her condition stable while recognizing she required ongoing medication. (Tr. 444). Dr. Trinidad believed Claimant could benefit from treatment with a psychiatrist for depression. He determined

8

Claimant would require evaluation to determine if she was a candidate for retraining for light work. He considered Claimant totally disabled until she was retrained. (Tr. 446).

On October 19, 2004, Claimant underwent a consultative examination with Dr. Mohammed Quadeer. Dr. Quadeer found Claimant to have some cervical tenderness and limited cervical range of motion. She had full range of motion of her extremities and walked with a safe gait without assistive devices. Claimant's grip was normal with 5/5 strength bilaterally. (Tr. 483).

On November 15, 2004, a physical residual functional capacity assessment form was completed by Dr. Luther Woodcock. He determined Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit about 6 hours in an 8 hour day and engage in unlimited pushing and/or pulling. He noted normal flexion and extension with all joints but her neck. Dr. Woodcock found no neurological deficits, safe and stable gait, normal grip strength and no limitations on handling, feeling or fingering. (Tr. 501-08).

At the administrative hearing, Claimant could perform housekeeping and laundry, fixed meals, shopped for groceries, drove, visited with family and friends, read, watched television,

and used her computer. (Tr. 114-19). Claimant stayed active gardening and pulling weeds. (Tr. 119).

In his decision, the ALJ found Claimant suffered from the severe impairments of status post anterior cervical diskectomy and fusion and depression secondary to chronic pain. (Tr. 22). He determined that Claimant was capable of performing a full range of light work with some limitations after considering the totality of the medical record and Claimant's testimony. (Tr. 27).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In this case, the ALJ accurately assessed Claimant's claims of pain and limitations in light of the medical record available to him. This Court finds no deficiencies in his analysis which would warrant reversal.

## RFC Assessment

Claimant also contends the ALJ failed to consider all of Dr. Trinidad's findings in arriving at her RFC. Specifically, Dr. Trinidad noted some weakness in grip strength and found Claimant should be evaluated and retrained before a determination could be made as to whether she could return to light work. Dr. Trinidad is the only examining physician who found any deficiencies in Claimant's grip strength. It was not error for the ALJ to consider Dr. Trinidad's findings as isolated. Additionally, Dr. Trinidad's conditional statement concerning Claimant's ability to engage in light work is non-committal at best and inconclusive at worst. Contrary to Claimant's assertions, the ALJ accurately summarized

Dr. Trinidad's conclusions. The ALJ's ultimate determination on Claimant's RFC is reflective of the entire record and is not in error.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of March, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE